IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HIMARK BIOGAS, INC.,

Plaintiff

vs.                                                    Case No. 14-1070-SAC

WESTERN PLAINS ENERGY LLC,

Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant Western

Plains Energy LLC's ("WPE's") application for confirmation of arbitration

award (Dk. 15), the plaintiff Himark Biogas, Inc.'s ("Himark's") motion to

vacate the arbitration award (Dk. 19), and the defendant WPE's request for

oral argument pursuant to D. Kan. Rule 7.2. (Dk. 26). After reviewing the

parties' respective filings, the court is confident it understands the parties'

presentation of the issues and does not see oral argument as substantially

assisting the reaching of an informed decision. The court denies WPE's

request for oral argument.

This case arose from the design, installation, and construction of

a biogas plant ("Plant") at WPE's ethanol production facility in Gove County,

Kansas. Using the facility's waste and other feedstock, including cattle

feedlot manure, the Plant was expected to produce enough biogas using an

anaerobic digester to meet WPE's own energy needs. Himark did a feasibility

study for the digester, provided consulting services, and licensed the technology for the digester. WPE contracted with the non-party ICM, Inc. to serve as the general contractor and to provide various services related to the design and construction of the digester that used Himark's licensed technology. Expenses for the digester exceeded projected costs, and the digester did not perform as expected. Blame for the digester's substandard performance was cast on each other, and claims for failure to perform contractual obligations were made.

With arbitration proceeding already between WPE and ICM, the defendant WPE filed a motion to compel arbitration in this case. The court granted the motion upon finding that "the arbitration clause in the Licensing Agreement applies to all of Himark's claims." (Dk. 12, p. 13). The court ordered the parties to "proceed to arbitration in accordance with the Licensing Agreement's arbitration clause" and to file "a joint status report" on "the progress of the arbitration." *Id.*

On January 17, 2015, WPE filed the report on behalf of the parties stating that it understood Himark's counsel at the time was not licensed in this court. (Dk. 13). The report stated, "The parties' dispute is currently being arbitrated before the International Court of Arbitration of International Chamber of Commerce." *Id.* The report also disclosed that the arbitration had been assigned a case number, had a tribunal selected, but

2

had not set an arbitration date. *Id*. Approximately six months later, WPE submitted the second status report:

> The parties' dispute was originally being arbitrated before the International Court of Arbitration of the International Chamber of Commerce and had been assigned Case No. 20486/RD.  The Parties subsequently stipulated to having their dispute heard before the American Arbitration Association, in arbitration no. 57 20 1400 00037. Excluded from arbitration were Plaintiff Himark Biogas, Inc.'s United States patent law claims, which the parties have stipulated may be adjudicated before this Court, if necessary, at the conclusion of the arbitration process.  The arbitration is scheduled to commence November 9, 2015.

(Dk. 14). On November 26, 2015, WPE filed its application for confirmation of the arbitration award. (Dk. 15). The application states the hearing commenced on November 9, 2015, before the American Arbitration Association ("AAA") panel, and its final award was entered on November 13, 2015. WPE asks the court to enter judgment upon the AAA's final award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, specifically § 9.

The FAA provides that within one year of the arbitration award, a party may apply to the specified court "for an order confirming the award," and the court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. The Supreme Court has said these three sections, §§ 9-11, should be read, "as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightway," and as not opening "the door to the full-

bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (internal quotation marks and citations omitted). Thus, "[u]nder the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, ---U.S.---, 133 S. Ct. 2064, 2068 (2013). In particular, "[a]n arbitration award will only be vacated for the reasons enumerated in . . . § 10, or for a handful of judicially created reasons." *Burlington Northern and Santa Fe Ry. Co. v. Public Service Co. of Oklahoma*, 636 F.3d 562, 567 (10th Cir. 2010) (internal quotation marks and citation omitted).

Section 10 of the FAA authorizes a United States court to vacate an arbitration award upon the application of any party to the arbitration under any of four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Himark pursues arguments under the last three

circumstances for vacating the arbitration order. The court's discussion will

track Himark's briefing order of the arguments.

Misconduct in Twice Refusing to Postpone Hearing—§ 10(a)(3)

Less than a month before the scheduled evidentiary hearing,

Himark twice asked the panel to postpone the hearing. Himark offered

different reasons for each request, and the panel denied both requests.

Before reviewing the ruling in each, the court lays out the procedural

posture of the case and the standards governing its review of this issue.

When Himark voluntarily joined this AAA arbitration in February

of 2015, it expressly accepted as one of the conditions that, "[a] firm date

for the hearing and a back-dated calendar will be set." (Dk. 19-2, pp. 1-2).

Himark then agreed with the parties to a schedule that was set out in the

panel's scheduling order of March 18, 2015:

> 13. At this time, there are two potential dates for beginning the
> evidentiary hearing:
>   a) The evidentiary hearing will begin on November 9, 2015, if
> Arbitrator Yungblut is available at that time.
>   b) The evidentiary hearing will begin on January 11, 2016, if
> Arbitrator Yungblut is not available for the earlier date.

(Dk. 19-3, p. 2). The scheduling order required Himark to file its demand by

April 15, 2015, to file an initial disclosure of witnesses on April 24, to identify

and provide written reports of its experts by July 31, 2015, to complete all

depositions by October 2, 2015, to provide all requested documents by

October 12, 2015, and to "exchange hearing exhibits, a final list of

witnesses, and a damage calculation by October 26." (Dk. 19-3, pp. 1-2).

On June 8, 2015, the Panel emailed the parties disclosing the arbitrators'

contacts, if any, with the parties' identified experts and also confirming "that

the parties have agreed to move forward with the November hearing dates .

. . [and] that the January dates may now be released." (Dk. 22-15, p. 5).

Section 10(a)(3) permits a reviewing court to vacate the

arbitration award when the arbitrator is "guilty of misconduct in refusing to

postpone a hearing, upon sufficient cause shown." In applying this

circumstance for vacatur, the Tenth Circuit has observed:

> Because the primary purpose for the federal policy of favoring
> arbitration is to promote the expeditious resolution of disputes, a
> court's review of the arbitrator's decision to postpone or not postpone
> the hearing is quite limited. *See Raiford v. Merrill Lynch, Pierce,*
> *Fenner & Smith*, 903 F.2d 1410, 1413 (11th Cir. 1990) ("When the
> parties agreed to submit to arbitration, they also agreed to accept
> whatever reasonable uncertainties might arise from the process.");
> *Fairfield & Co. v. Richmond F. & P. R.R. Co.*, 516 F. Supp. 1305, 1313-
> 14 (D.D.C. 1981)("[A]ssuming there exists a reasonable basis for the
> arbitrators' considered decision not to grant a postponement, the
> Court will be reluctant to interfere with the award on these grounds.").

*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463-64 (10th Cir. 1995).

Similarly, "the basic policy behind arbitration . . . is to permit parties to

resolve their disputes in an expeditious manner without all the formalities

and procedures [of] full fledged litigation." *Scott v. Prudential Sec., Inc.*, 141

F.3d 1007, 1016 (11th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999),

*overruled on other grounds by Hall St. Associates, L.L.C.*, 552 U.S. 576.

Thus, "[a] mere difference of opinion between the arbitrators and the

moving party as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)." *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1301 (11th Cir. 2015) (internal quotation marks and citation omitted).

It is difficult to imagine that an arbitration panel could be "guilty of misconduct" if its refusal to grant a requested postponement did not amount to an abuse of discretion. *See ARW Exploration Corp.*, 45 F.3d at 1464 (finding that "the arbitrator was clearly acting within the scope of his discretion in not continuing the hearing"); *Painters Local Union No. 171 Int'l Bhd. of Painters & Allied Trades, AFL–CIO v. Williams & Kelly, Inc.*, 605 F.2d 535, 538 (10th Cir. 1979) (finding that the arbitrator "did not abuse his discretion in refusing to grant a continuance"); *see Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006) (applying the standard of abuse of discretion that results in serious prejudice). The determination of whether a denial of a request for a continuance constitutes an abuse of discretion "turns largely upon the circumstances of the individual case." *Rogers v. Andrus Transp. Services*, 502 F.3d 1147, 1151 (10th Cir. 2007). The relevant factors to be considered include:

> the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the [panel] resulting from the continuance; the need asserted for the continuance and the harm that appellant might suffer as a result of the [panel's] denial of the continuance. . . . No single factor is determinative and

the weight given to any one may vary depending on the extent of the [respondents'] showing on the others.

*Id.* (quoting *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987)). "Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d at 400 (quoting *El Dorado Scho. Dist. No. 15 v Continental Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001)). The absence of an explicitly stated reason is harmless where the reason is apparent. *Long v. United States*, 972 F.2d 1174, 1183 (10th Cir. 1992). A movant seeking to vacate under § 10(a)(3) must show that it "suffered prejudice from the panel's refusal to delay the proceedings." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d at 400 (citation omitted).

*Request of October 17, 2015*

Himark waited to file its first request to postpone in a pleading dated October 17, 2015. It requested that the evidentiary hearing scheduled for November 9, 2015, "be adjourned" in favor of January 11, 2016, a date once considered as an alternative hearing date. (Dk. 19-9). The reasons given for the request were several. The principal one was that Himark's financial condition and lack of insurance support had caused a severe adverse impact on "Himark's position in the instant arbitration." Id. at ¶ 5. As a result, Himark had not paid its share of the arbitration costs or the filing fee. The law firm representing Himark had been financing "virtually the entirety of Himark's representation" on a deferred fee basis. Id.  Himark's

8

errors and omissions insurance carrier had yet to make a coverage determination, and this delay had "been exacerbated by miscommunications between Himark and Lloyd Sadd [Himark's insurance broker] with respect to such coverage." (Dk. 19-9, p. 1). Apparently, Lloyd Sadd had informed Himark that its general liability insurance carrier had denied coverage but Himark did not understand that loss notices also had been delivered to two other insurers under separate policies, included the errors and omissions policy. Himark represented that its "posture in the instant case has been circumscribed by the limited resources that can be deployed, not the least of which is the inability to engage additional specialized counsel." *Id*. at ¶ 5. The request discusses that if insurance coverage is found to have been triggered by the arbitration then the insurer would have the right to appoint counsel to defend and conduct its own investigation and defense. Finally, Himark's counsel, Mark Rodrieg, represented that three days earlier he had suffered a broken rib and dislocated shoulder in an accident and that while he was still working his productivity level had "been adversely affected" and he was "now seriously concerned about . . . [his] ability to prepare" for the scheduled evidentiary hearing. *Id.* ¶ 7.

The arbitration panel held a conference call in response to Himark's first motion to postpone. (Dk. 19-10). On October 23, 2015, the panel entered an order denying Himark's motion after pointing out that the prior scheduling order and hearing date had been "prepared, approved, and

submitted" by the parties. *Id.* at ¶ 1. The order does not explicitly state a basis for denying the requested postponement other than Himark having agreed to the evidentiary hearing date established in the scheduling order.

Himark argues that it was diligent in filing its request 23 days before the scheduled evidentiary hearing and that its reasons are more than sufficient for granting the postponement particularly when the inconvenience to others "would have been minimal." (Dk. 19, p. 9). Himark insists the panel's ruling clearly and substantially prejudiced it. Recounting its own limited financial resources and the uncertainties of insurance coverage, Himark summarily concludes that these "could have been alleviated, if not resolved, by a postponement" and that the panel's denial "imposed a substantial and prejudicial burden" on it. *Id.* at p. 10.

WPE responds with a lengthy recitation of proceedings that undermine Himark's claim of diligence in pursuing a postponement. Himark's reply does not dispute much of what WPE recites. After this court ordered the parties in July of 2014 to proceed to arbitration on Himark's claims, WPE waited for Himark to initiate the proceedings with the ICC. When 50 days had passed without Himark acting, WPE was forced to initiate the proceedings before the ICC pursuant to the licensing agreement. Himark then did not meet the ICC's deadlines for filing its answer and for nominating an arbitrator. Counsel finally appeared for Himark in November of 2014 and so requested to file an answer and to nominate an arbitrator over a month

and half after the deadline expired. The ICC calculated the costs of arbitration and gave the parties until January 12, 2015, to pay the costs. Himark did not make any payments toward its share of those costs. Instead, counsel for Himark wrote the ICC in January of 2015 asking for either a suspension of the arbitration or an extension of all deadlines for 8 weeks to March 12, 2015. The reason given was that because Himark was undergoing a change of control, a reduction in the number of owners and a reorganization of its company, the additional funding needed from a third party had been "slightly interrupted." (Dk. 22-12, p. 1). WPE objected to this delay, and the parties discussed Himark voluntarily joining the pending AAA arbitration between WPE and ICM which would have lower costs for arbitration.

Even after it voluntarily joined the AAA arbitration in February of 2015, Himark's pattern of missing deadlines continued. Some of the more glaring examples are Himark's delayed responses to the opposing parties' requests for production. To the initial production requests, Himark responded a day late, on April 25, 2015, with only ten documents in to its disclosure folder and with the statement that "Himark will be making further disclosures that will be added to this folder." (Dk. 22-14, p. 2). WPE offers emails showing it made repeated requests for these additional documents in May and June. The panel ordered Himark to supplement its disclosures by August 7, 2015. (Dk. 19-7, p.2-2). According to WPE, Himark thus

11

produced, over three months late, 983 documents and 1,728 email. (Dk. 22, p. 6). As far as WPE's third production request, Himark had until October 12, 2015, to respond. On October 14, 2015, WPE went to the panel to enforce the deadline, and the panel ordered Himark to produce all requested documents by October 16th. (Dk. 22-16).

Nor does the court agree with Himark's claim of its own diligence in seeking this continuance. Himark accepted the panel's confirmation on June 8th that it had "agreed to move forward with the November hearing dates." (Dk. 22-15, p. 5). Yet, as of June 8th, Himark had let more than a month pass without supplementing its initial production disclosure, and it still had not paid its filing fee which was due April 30. According to the affidavit of Mark Rodreig, Himark did not have funds to pay the filing fee of $8,200.00 due at the end of April and Himark did not attempt to pay this fee until October 19. As Himark admits in its reply, "As of October of 2015, when the First Request was filed, the financial situation was still unresolved, thus preventing payment of necessary filing fees and 'severely prejudice[ing] Himark's position' and ability to prepare a defense." (Dk. 25, p. 4). In other words, throughout these proceedings, Himark knew of its limited financial resources and of the uncertainty of insurance. Himark was well aware of its predicament when it joined this arbitration agreeing in March to the alternative hearing dates and when in June it agreed to the November hearing dates. It is not diligence to wait less than a month before the

12

scheduled evidentiary hearing to ask for a continuance on the primary ground that had been known for months and that apparently had not been addressed. It also must be noted that the upfront financial commitment involved with arbitration is one of those certainties that come with the arbitration process and should be anticipated with having an arbitration provision in a licensing agreement. Finally, WPE offers emails showing that Himark waited more than five months before notifying its error and omissions carrier of pending arbitration. For all these reasons, the factor of diligence simply does not favor Himark.

Himark's weakest argument, however, is the likelihood that the panel's continuance to January would have met Himark's expressed need for the continuance. In Himark's motion to the arbitration panel and to this court, there is no showing of a likelihood that a two-month extension would have given Himark the financial resources allegedly needed to prepare its claims and defenses. It had been 19 months since Himark filed this federal lawsuit, and it still did not have the funds to pay the $8,200.00 arbitration filing fee, to pay its attorney fees, or to finance its defense as suggested in its motion. The court is given no tenable explanation on how this would have changed in this limited two-month window. Himark's speculation on this point does not show any error in the panel's decision to postpone the evidentiary hearing.

Mr. Rodrieg described his personal situation as an accident occurring on Wednesday, October 14, 2015, resulting "in a broken rib and a dislocated shoulder." (Dk. 19-9, p. 2). He filed Himark's request for a continuance three days later on Saturday, October 17, 2015, stating in part, "While I am now able to continue working, I am required to get additional rest and my overall productivity level has been noticeably adversely affected." *Id*. Mr. Rodrieg concluded that he was "now seriously concerned by my own ability to prepare for the Evidentiary Hearing as currently scheduled." *Id*. The court cannot fault the panel in its weighing of this factor, as Mr. Rodrieg failed to specify how his injury and recuperation would impact his ability to prepare.

Himark insists it was clearly and substantially prejudiced by the denial of this continuance. The court is not persuaded by this argument that is based on little more than speculation. Himark points to its financial inability to prepare the case that it wanted and that it apparently had put off preparing for months. The court does not find the panel was guilty of misconduct based on Himark's "could have been" claims of prejudice. (Dk. 19, p. 10). Himark has not shown an abuse of discretion in the panel's denial of this postponement as to justify setting aside the arbitration award.

*Request of November 5, 2015*

On November 5, 2015, Himark filed with the arbitration panel a "Motion to Dismiss the Arbitration or Adjourn the Evidentiary Hearing." (Dk.

14

19-12). Himark filed this motion the day after learning that ICM and WPE had settled. Himark's motion described this as "a dramatic and material change in these arbitration proceedings [occurring] less than five days before the scheduled commencement of the Evidentiary Hearing." (Dk. 19-12, p. 1, ¶ 2). Himark argued that ICM's participation was "the primary reason for Himark" joining the AAA proceeding and that Himark had planned on ICM's presentation preceding its own. Himark believes its strategy of relying on ICM was "prudent" because WPE had alleged defects as caused by either or both ICM and Himark and because they shared a common defense of WPE's mismanagement of required feedstocks. With WPE's withdrawal from the arbitration, Himark says its "defense was hindered" because it now needed to subpoena witnesses which ICM would have presented and to prepare examinations and exhibits of these witnesses in the five days before the hearing. Himark asserts a postponement would not have materially prejudiced any party and denies that the prejudice to it is outweighed by WPE's counsel's vacation plans or by the circumstances of delay that were argued before the panel.

WPE counters that while Himark may have had financial reasons for relying on ICM for its defenses, this was still a strategy with a risk if Himark was not preparing a defense in the event of a settlement that was not only possible, but a common and foreseeable outcome in arbitration. WPE disputes that Himark did not benefit from joining the AAA arbitration

despite ICM's eventual settlement. Specifically, Himark benefitted from ICM's involvement in the arbitration through discovery shared, witnesses made available for deposing, and ICM's counsels' work produced on common issues. WPE points out that Himark would not have had these benefits in federal court litigation or the ICC arbitration, because ICM was not a party to either of these proceedings. Thus, Himark's claim of prejudice is strained at best, since it had been willing at one point to have these matters resolved without ICM's participation. WPE also counters Himark's specific arguments of prejudice in presenting witness testimony by noting that ICM listed its witnesses as "may call" and so Himark had misplaced its reliance on ICM's listing. Of the witnesses on Himark's list, most were current or former Himark employees and the last four had been deposed and Himark had participated in those depositions. WPE also notes the flexible rules in arbitration for presenting witness testimony which allow for deposition, declaration, affidavit, video conferencing, internet communication, and other means rather than in person. Himark's counsel and CEO did appear shortly before the hearing, but when their motion to continue/dismiss was denied, they made the strategic decision to present no evidence through testimony or exhibits and said, "Himark would not participate in the hearing." (Dk. 19-15, p. 3).

These circumstances simply do not show the panel was "guilty of misconduct" or abused its discretion in denying Himark's second request to

postpone made on November 5, 2015, one day after ICM's settlement with WPE and just four days before the evidentiary hearing that had been scheduled since March of 2015 (eight months earlier) and confirmed in June of 2015 (five months earlier). In its order denying Himark's motion, the panel laid out the history involving Himark's voluntary joinder to the arbitration proceedings and the agreed scheduling orders:

> After reviewing the history of Himark's agreement to the joinder and consolidation of the matters, extensive questioning of Mr. Rodrieg by the Panel to understand the basis for his assertions and preparation of his case, a discussion of the original Federal Court action filed in Wichita, Kansas, by Himark against WPE and the International Chamber of Commerce action between WPE and Himark, the Panel members met privately to discuss the two motions.

(Dk. 19-15, p. 2). As much as Himark seeks to blame the prejudice on the panel's failure to grant its motion, the record shows the blame largely rests with Himark in not preparing its own defense, in not anticipating the possibility of settlement, and in not setting forth the specifics on how Himark would be prejudiced without a postponement. WPE's arguments persuasively demonstrate that Himark pursued the risky strategy of riding the coattails of ICM in discovery and then the evidentiary hearing, and when that strategy failed due to ICM's settlement, it took the even riskier strategy of not even making a good faith attempt at a defense. In arguing prejudice, Himark does not specify which witnesses and evidence would need to be presented for its defenses, what prevented them from offering this testimony and evidence consistent with the relaxed evidentiary rules governing arbitration

proceedings, and why they were not ready to proceed with their own case one-week before the evidentiary hearing that had been scheduled for months and that was a matter on which all the parties and the panel had been relying upon. The panel did not act unreasonably in questioning and not accepting Himark's claim of prejudice based on still not knowing one week before the hearing which witnesses would be important to its case. The panel had a reasonable basis for not only thinking that the Himark's claimed prejudice was self-inflicted, but also exaggerated. While ICM's settlement certainly disadvantaged Himark in going forward because of Himark's own strategy in this arbitration, the panel acted consistent with the expeditious purpose behind arbitration in setting a firm hearing date agreed to by the parties, in consistently pushing the parties toward a prompt hearing, and in denying a continuance to a party who consistently missed deadlines and did not act diligently. Under all these circumstances, the court finds the panel had a reasonable basis in denying Himark's second motion for postponement and, therefore, is not guilty of misconduct as to justify vacating the arbitration award pursuant to 9 U.S.C. § 10(a)(3).

Imperfect Execution of Powers--§ 10(a)(4)

        Himark contends the panel "imperfectly executed its powers by not considering all claims submitted for arbitration, considering the patent infringement claim despite lacking jurisdiction to do so, and failing to follow its own procedural orders." (Dk. 19, p. 13). Himark cites the terms of §

10(a)(4) that allows a court to vacate an arbitration award when the arbitrators "so imperfectly executed them [their powers] that a mutual, final and definite award upon the subject matter was not made." Himark first complains that the panel did not abide by the court-ordered arbitration in that it failed to arbitrate Himark's claims against WPE for arbitration and prevented Himark from filing them due to unpaid filing fees. Himark next complains that the panel's arbitration award contains findings and observations related to the licensing agreement and technology governing Himark's patent infringement claim which the parties and panel agree would not be arbitrated. Finally, Himark accuses the panel of imperfectly executing its powers after the ICM settlement by not following its earlier order that bifurcated proceedings with first addressing common issues of all three parties and then addressing the issues disputed between Himark and WPE.

The Supreme Court has said the question under § 10(a)(4) is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided the issue." *Stolt-Hielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 694 (2010) (citations omitted). Thus, "[a] party seeking relief under that provision bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. at 2068. The Court in *Oxford* said:

> "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt–Nielsen*, 559 U.S., at 671, 130 S.Ct. 1758. Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably

> construing or applying the contract" must stand, regardless of a court's view of its (de)merits. *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); internal quotation marks omitted). Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. *Eastern Associated Coal*, 531 U.S., at 62, 121 S.Ct. 462 (quoting *Misco*, 484 U.S., at 38, 108 S.Ct. 364).

*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. at 2068. The Tenth Circuit recognizes that, "once a court independently determines the parties agree to arbitrate an issue, it should give 'extreme deference' to an arbitrator's decision regarding the scope of that issue." *Burlington Northern and Santa Fe Ry. Co. v. Public Service Co. of Oklahoma*, 636 F.3d at 568 (citation omitted). The panel's determination of its authority "is entitled to the same 'extreme deference' as its determinations on the merits." *Id.*

### *Failed to Arbitrate Himark's Claims*

Himark complains that its claims filed in federal court against WPE were not resolved in arbitration nor heard by the panel, "because of unpaid filing fees." (Dk. 19, p. 14). On this point, Himark offers only its conclusion that, "Because the Panel never heard Himark's claims originally submitted for arbitration, it was incapable of rendering a mutual, final, and definite award upon the subject matter submitted for arbitration. Therefore, the arbitration award should be vacated." *Id*. Himark appears to take the position that any arbitration award entered without a final determination of

20

its claims on the merits must be vacated regardless of the panel's reasons for not arbitrating Himark's claims. The court finds no authority or tenable arguments in Himark's brief for this position. The arbitration panel's ruling that foreclosed consideration of Himark's claims was a procedural one that reasonably enforced filing deadlines properly communicated to Himark.

As for procedural rulings generally in arbitration proceedings, the Tenth Circuit has said that, "The federal courts are to give even greater deference to an arbitrator's decisions on matters of procedure which arise from the dispute and bear on its final disposition. The Supreme Court has stated quite plainly that matters of procedure lie solely within the discretion of the arbitrator." *United Steelworkers of America, AFL-CIO-CLC v. Ideal Cement Co., Div. of Ideal Basic Industries, Inc.*, 762 F.2d 837, 841 (10th Cir. 1985) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). The court agrees that giving this discretion on procedural matters means:

> Procedural rulings can only lead to vacating an award if the ruling denied the petitioner "fundamental fairness." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013). . .  Arbitrators must be empowered to enforce procedural deadlines, and [t]he time frames that arbitrators allow under approved schedules for discovery . . . deadlines [which are] binding on all parties, ordinarily are sufficient to provide them with adequate opportunity to present evidence and arguments." *Id.* [*Triomphe Partners, Inc. v. Realogy Corp.*, 2011 WL 3586161, at *5 (S.D.N.Y. Aug. 15, 2011)](citation omitted). Accordingly, "[f]ederal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (citation

omitted). The Arbitrator's procedural rulings in this case did not involve misconduct.

*Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 352 (S.D.N.Y. 2014), *aff'd*, 619 Fed. Appx. 37 (2d Cir. 2015) (unpub.). Himark has failed to carry its heavy burden of showing the panel's enforcement of the filing deadlines to be so lacking in fundamental fairness as to be an abuse of discretion and misconduct.

### *Consideration of Patent Infringement Claim*

Himark accuses the arbitration panel of the following:

In its Final Award, the Panel disclaims that "[n]othing contained in this Final Award may be construed as rendering an opinion as to the validity of or infringement by [WPE] of any of the Himark patents"; however, prior to the disclaimer the Panel made a number of factual findings and observations related to both the Licensing Agreement and technology at issue in Himark's infringement claim. **Exhibit O at 9.** Despite not issuing a formal opinion on the infringement claim, these findings and observations reach beyond the scope of what the Panel was permitted to review. The effect of these statements is most clear when examining WPE's Motion to Confirm currently before the Court, where WPE notes that "[b]ased on the AAA Arbitration Panel's findings and the award entered, WPE does not believe that Himark's patent law claims remain viable." **[Document 15] at 1.** Even if the Panel made no explicit opinion, the effect of the Final Award has implications for an infringement claim that go beyond the Panel's agreed jurisdiction. . . . The Panel strayed from their delegated task, and decided matters beyond those that it could decide, such that this Court should vacate the arbitration award.

(Dk. 19, pp. 14-15). Himark does not elucidate, outline or provide the details for its position that the panel's ruling impacts or implicates its patent infringement claim. Instead, Himark assumes that the ruling has this impact, because WPE's two-page motion to confirm the arbitration award includes

this single-sentence footnote, "Based on the AAA Arbitration Panel's findings and the award entered, WPE does not believe that Himark's patent law claims remain viable." (Dk. 15, p. 1).

As the party seeking relief under § 10(a)(4), Himark bears a heavy burden, and its conclusory argument does not come close to meeting this burden. Considering the extreme deference that is to be shown the arbitration panel on this matter, the court is in no position to presume the panel exceeded its authority simply from WPE's single-sentence opinion which is not explained or unpacked as to know its merit or strength. Contrary to Himark's position, the record fully supports the panel's exercise of authority in interpreting and applying the licensing agreement. In fact, the court ordered arbitration in this case pursuant to the terms of the parties' licensing agreement. Himark comes forth with no argument against the panel having jurisdiction to interpret and apply the licensing agreement with respect to the claims before it. As the record shows, WPE's claims in the arbitration directly involved both representations found in the licensing agreement (negligent misrepresentation and fraud) and express warranty terms of the licensing agreement (breach of warranty). (Dk. 19-8, pp. 6-7, 9). On its warranty claim, WPE alleged that Himark had breached its warranty obligations in not providing a digester that met the specifications of the licensing agreement and in not making changes to the digester to meet those specifications at no cost to WPE and that WPE had "performed all of its

predicate obligations under the License Agreement." (Dk. 19-8, p. 9). Having bargained for an arbitrator's construction and enforcement of the licensing agreement, Himark has failed to show how the panel's decision exceeded the scope of its contractually delegated authority.

*Failed to Follow Procedural Rules*

One of the agreed terms to Himark's voluntarily joinder in the AAA arbitration was that the panel would "bifurcate the hearing—by hearing the common issues first with all three parties, then hearing the Himark/WPE issues after completion of the first phase." (Dk. 19-2, pp. 1-2). Himark complains that with ICM's settlement, the Panel changed its procedures and "the two-phased hearing melted into a one-stage 'dogpile' against a strategically crippled Himark." (Dk. 19, p. 15). Without showing how this bifurcated procedure remained necessary after ICM's settlement or how this procedural ruling was not a matter well within the panel's discretion, Himark asks the court to find that the panel exceeded and imperfectly executed its powers. Again, Himark has failed to carry its heavy burden.

Evident Partiality in Enforcing Time Deadlines—§ 10(a)(2)

Himark argues the panel demonstrated evident partiality in not allowing its answer and counterclaims to be filed late but in allowing WPE to do so. Not only does the record not support Himark's allegations that the panel disparately treated the parties, but even if these allegations were true, they would not be enough to sustain a § 10(a)(2) ground.

24

Himark filed its answer and counterclaims on April 16, 2015, and was notified the filing would be returned in two weeks if Himark did not pay its filing fee of $8,200.00. The two-week period expired without payment, and the period was extended until June 12. (Dk. 22-20, p. 1). Despite a six-week extension, Himark did not pay the filing fee. The AAA notified Himark by email on June 15 that:

> Per the email below and correspondence with Himark individually, the filing fee for the $2,500,000 Himark Counterclaim was due on or before June 12th. As of today's date, the AAA has not received payment on the claim. Under AAA Construction Rule R 4c, the counterclaim filing fee is due 14 days from the date of filing. As this payment has not been made, the AAA is returning the attached counterclaim as incorrectly filed. As such, it is no longer able to be considered by the Panel as part of this matter during the hearings or as part of the award. I have notified the Panel of the return.
> If Himark believes this claim is being returned in error, please contact me immediately.

(Dk. 22-21, p. 1). According to Himark's counsel, a regional vice president of AAA, Rod Toben, assured him that Himark "would be allowed to cure its defective counterclaim by submitting filing fees out of time." (Dk. 19-5, p. 2). Himark did not attempt to pay its filing fee until October 19, 2015, and WPE objected to Himark's efforts to have its counterclaims filed so late. WPE points out that all written discovery and depositions had been completed and that all discovery deadlines had passed. The deadline for submitting final exhibit lists, witnesses, and damage calculations was one week away, and the evidentiary hearing was three weeks away. Granting Himark's request would have resulted in reopening discovery, continuing all deadlines, and

rescheduling the hearing for a later date. The Panel ruled against Himark

filing its counterclaims this late:

> Scheduling Order #2 established a firm date of April 15, 2015, for
> Himark to file its demands asserting any non-patent claims for
> recovery against WPE and/or ICM. Paragraph 17 of Scheduling Order
> #2 states that all deadlines will be strictly enforced. Himark's
> counterclaims were filed after the stated deadline stated in Paragraph
> 2 of Scheduling Order #2 and are consequently barred.

(Dk. 19-10, p. 1).

In contrast, the Panel granted WPE's request for an extension to

July 31 for filing its specification of claims, and WPE submitted its

specification by email late on the night of July 31 according to Mountain

Standard time zone. (Dk. 22-31). The email may have arrived on the early

morning hours of August 1 for Himark's counsel in Central Standard time

zone. There is nothing of record to show that Himark objected to the

extension when it was granted or to the "late" July 31 filing at any point

during August or September. In fact, Himark's counsel sent an email to the

AAA on October 5, 2015, stating that he believed "all dates in the Scheduling

Order have been, and can continue to be, met." (Dk. 22-30, p. 1). Not until

October 26, when Himark filed its motion to strike, was the first time that

Himark challenged the timeliness of WPE's specification of claims. The AAA

denied the motion to strike, noting:

> The Motion to Strike was addressed by the Panel. Mr. Rodrieg
> and Mr. Baumgartner were given an opportunity to discuss the basis
> for the Motion to Strike and the facts associated with each of Himark's
> assertions that WPE's filings were late and should be barred. Mr.
> Rodrieg's argument to strike was based on strict adherence with the

terms of Scheduling Order #2, citing the Panel's Scheduling and Hearing Order, dated October 23, 2015, in which the Panel barred Himark's counterclaims against WPE. Himark's counterclaims were filed after the required date. More importantly, however, Himark failed to pay the AAA filing fee at the time its counterclaims were filed and the filing fee was not paid by Himark after numerous reminders issued by the AAA to Mr. Rodrieg. The counterclaim fees remained unpaid at the time the Scheduling and Hearing Order was issued by the Panel.

(Dk. 19-15, p. 2). In short, the panel offered a reasonable ground for distinguishing its ruling against Himark's late claims and its ruling for WPE in not striking the claims filed in accordance with panel's scheduling orders. The court finds no serious grounds argued here to support vacatur for alleged "evident partiality . . . in the arbitrators," 9 U.S.C. § 10(a)(2).

Nothing that has been presented or argued meets the definition of evident partiality, which means "evidence of bias or interest of an arbitrator [that is] direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Ormsbee Development Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir.), *cert. denied*, 459 U.S. 838 (1982). That Himark was refused permission to file claims months late over the other side's objection while WPE was allowed to file its claims at best an "hour" late without any timely objection from a party is hardly a direct, definite and demonstrable circumstance of bias. Himark's complaint about these rulings does not create a reasonable impression of partiality. *See Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 148 (1968). The court cannot find any reasonable basis for finding that the panel failed to follow its own rules. Even if it could, this would not be a § 10(a)(2) ground for relief.

27

"[I]f an arbitrator's failure to comply with arbitral rules, without more, could properly be considered "corruption" or "misbehavior," the FAA's grounds for vacatur would be precisely as varied and expansive as the rules private parties might choose to adopt." *Zurich American Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (rejecting such an argument).

The FAA requires a federal district court to "grant" an order confirming an arbitration award, "unless the award is vacated, modified, or corrected as prescribed in sections, 10 and 11." 9 U.S.C. § 9. Having concluded that Himark has failed to establish any grounds sufficient for vacating the award, the court grants the WPE's application to confirm the arbitration award. The court understands the parties withheld from arbitration Himark's patent claims pled against WPE, and the arbitration panel stated that its final award may not be "construed as rendering an opinion as to the validity of or infringement by Western Plains of any of Himark patents." (Dk. 15-1, p. 9).

IT IS THEREFORE ORDERED that WPE's application for confirmation of arbitration award (Dk. 15) is granted, and its request for oral argument pursuant to D. Kan. Rule 7.2. (Dk. 26) is denied;

IT IS FURTHER ORDERED that Himark's motion to vacate the arbitration award (Dk. 19) is denied.

IT IS FURTHER ORDERED that the case is referred to the magistrate judge for discovery and pretrial work on Himark's remaining patent claims.

Dated this 4th day of April, 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge